UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JANET PAINTER,

     Plaintiff,

     v.

CAROLYN W. COLVIN[1],
Commissioner of Social Security,

     Defendant.

NO.  CV-11-3126-JLQ

MEMORANDUM OPINION;
ORDER RE:  MOTIONS FOR
SUMMARY JUDGMENT;
ORDER OF REMAND

     Plaintiff appeals the final decision of the Commissioner of the Social
Security Administration ("Commissioner") which denied her application for
Supplemental Security Income ("SSI"), after a hearing before an administrative
law judge ("ALJ").   Before the court are Cross-Motions for Summary Judgment.
(ECF Nos. 20, 22).  Plaintiff is represented by attorney James Tree.  Defendant is
represented by Assistant United States Attorney Pamela DeRusha and Special
Assistant United States Attorney Stephanie Lynn F. Kiley.   Jurisdiction to review
the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and
1383(c)(3).  For the reasons set forth below, the Commissioner's decision is
remanded for further hearing.

---

     [1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit.
No further action is necessary to continue this action by reason of the last sentence
of 42 U.S.C. § 405(g).

ORDER - 1

# I.  LEGAL STANDARDS

## A.    Sequential Evaluation

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if the  impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b).  If she is, benefits are denied.  If she is not, the decision maker proceeds to Step 2.

Step 2: Does the claimant have a medically severe impairment or combination of impairments?  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the

impairment is not one conclusively presumed to be disabling, the evaluation proceeds to Step 4.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the inquiry proceeds to the Fifth and final Step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.

*Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).    This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence.  *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

**II.  Procedural History**

On March 25, 2008, Plaintiff applied for Disability Insurance Benefits and Supplemental Social Security Income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433 and §§ 1381–1383c. (Tr. 144-154). Plaintiff alleged disability with an onset date of January 18, 2008, due to the effects of the following conditions and her medications for these conditions: "anxiety, mental problems, shortness of breath, asthma, and lower back pain back." (Tr. 163). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 85-90).  Plaintiff requested an administrative hearing which took place on April 12, 2010 before ALJ Riley J. Atkins.  (Tr. 35-66).  On May 17, 2010, the ALJ issued his decision finding Plaintiff not disabled. (Tr. 24-34). Plaintiff subsequently submitted additional evidence to the Appeals Council and requested review of the ALJ's decision.  After considering the new evidence, the Appeals Council denied her request on October 27, 2011 (Tr. 1-6), making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  Plaintiff now seeks judicial review of the adverse decision. (ECF No. 1).

Plaintiff filed previous applications for Disability Insurance Benefits ("DIB") and SSI on February 11, 2005, alleging an onset date of December 2000.

These applications were denied initially, on reconsideration, and after an administrative hearing where Plaintiff was represented by counsel (Teal Parham). ALJ Riley J. Atkins also authored the January 17, 2008 decision denying Plaintiff's 2005 applications for benefits. The Appeals Council affirmed the denial of benefits on May 28, 2008 (Tr. 24), and Plaintiff did not appeal to federal court. Instead, she promptly applied for benefits anew.

**III. Factual Background**

The facts are contained in the medical records, administrative transcript (ECF No. 11)("Tr."), and the ALJ's decision, and are only briefly summarized here. Plaintiff was born in 1957 and was 51 years old at the time of the administrative hearing. She has a high school education and served in the U.S. Army from 1978-1981. Her 18-year marriage ended in 1997. She has worked as forklift operator (1998-1999), an assembly worker making telephone cables (1997-1998) (Tr. 186), and doing night maintenance at Wal-mart (1995-1997). (Tr. 164). She testified she was fired from her last job for being tardy. (Tr. 163).

Plaintiff has a history of drug abuse that is now behind her. The ALJ's prior decision noted that at one time she used methamphetamines intravenously twice a week and drank a fifth of alcohol daily. During this time, she was convicted of forgery and identity theft (in 2000). Plaintiff's emotional problems previously required three psychiatric hospitalizations (in 2000, 2001, and 2002), each stay lasting two weeks. (Tr. 51, 166). She stopped using methamphetamines in 2005 and also alcohol use in 2008 (Tr. 52-53).

Since 2003, she has been living with another couple, Denny and Judy Steers, whom she testified took her in while she was homeless. (Tr. 52). While they have asked for $50/month in rent, Denny Steers testified that their arrangement is "more or less" just a "gift" because his wife feels sorry for her. (Tr. 64). She last had a driver's license five years ago, but it was suspended due to a DUI and it remains suspended because of an outstanding $353 balance which

she testified she is paying on. (Tr. 54). She receives medical treatment from the Department of Veterans Affairs ("VA"). To attend her medical appointments at the VA Medical Center in Vancouver or Portland, approximately 90 miles from her home in Dallesport, Washington, she arranges transportation through the Disabled American Veteran transport van. (Tr. 55). At the time of the administrative hearing Plaintiff was 5'2 and 230 pounds, a weight, she testified, which was eighty pounds heavier than she was ten years earlier. (Tr. 41).

The medical record includes mental health counseling and general health treatment notes from the VA Medical Center from 1/24/2007-3/29/2010, as well as records of 2008, 2009 and 2011 examinations and evaluations of the Plaintiff performed for the Washington State Department of Social and Health Services (DSHS).

## 1.    Commissioner's 2008 Findings

The Administrative Record includes an (unsigned) copy of the ALJ's prior January 17, 2008 decision denying Plaintiff's previous applications for benefits. (Tr. 67-68). That decision was relied upon by ALJ Atkins in reaching the 2010 decision herein now on appeal. Accordingly, the 2008 decision is summarized here. In 2008, the ALJ determined that Plaintiff had the following severe impairments: chronic hepatitis B, depression, borderline personality disorder, alcohol dependence in partial remission, and methamphetamine dependence in remission. The ALJ found Plaintiff's back pain, PTSD, hypertension, and hypothyroidism, were non-severe, and considered the fact that she is obese. Plaintiff's substance abuse was deemed a material contributing factor. The ALJ attempted to determine the residual effects of Plaintiff's mental health infirmities with the substance abuse factored out. The 2008 opinion makes note of "weak medical evidence" in the record, lacking "any opinions from...physicians who opine...the claimant is disabled..." (Tr. 76). The sole opinion evidence analyzed in the decision was the September 30, 2007 opinion of Plaintiff's treating VA nurse

practitioner, Betsy Zucker, FNP that Plaintiff would likely miss more than four days of work per month.  The ALJ  rejected that opinion, in part, because it was based upon an assessment of Plaintiff's mental impairments which the ALJ deemed "outside her area of expertise."  (Tr. 76). The opinion noted Plaintiff's activities of daily living as including mowing the lawn, walks, driving a car, shopping for groceries, and caring for her roommate's four grandchildren, who were temporarily living with them. (Tr. 75).  Ultimately, the 2008 decision concluded Plaintiff was not disabled and was capable of performing simple, routine, repetitive light duty work, requiring no more than occasional contact with the general public, including her past relevant work as an electronics assembler. (Tr. 77).

**2. Commissioner's 2010 Findings**

On May 17, 2010, ALJ Atkins issued his second decision finding Plaintiff not disabled.  The ALJ found at Step 1 that Plaintiff had not engaged in substantial gainful activity since March 25, 2008, the date Plaintiff had dated her SSI application.  (Tr. 26).  At Step 2, the ALJ determined that Plaintiff has the same severe impairments as he found in his previous decision, with the exception that Plaintiff's alcohol dependence was now in remission, rather than partial remission. The ALJ deemed the following impairments severe: chronic hepatitis B, depression, borderline personality disorder, alcohol dependence in complete remission, and methamphetamine dependence in remission.  The ALJ found that Plaintiff's back pain, post-traumatic stress disorder, symptoms of a thyroidectomy and the excision of a cyst on her wrist, gastroesophagael reflux disease, hypertension, asthma, and cirrhosis were "non-severe" in nature. (Tr. 26-27).

At Step 3, the ALJ determined that the Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Pt. 404 Subpt. P App 1 (Listings).

At Step 4, the ALJ determined Plaintiff has the residual functional capacity

("RFC") to perform light work, but with restrictions to work involving simple, routine, repetitive tasks involving no more than occasional contact with the general public. (Tr. 28).

At Steps 4 and 5, the ALJ relied on the testimony of the vocational expert from an October 2007 hearing held in connection with Plaintiff's prior (2005) disability applications. Based upon the vocational testimony proffered at the October 2007 hearing, the ALJ concluded that Plaintiff was able to perform her past relevant work as a electronics assembler. (Tr. 77). As an alternative finding, the ALJ proceeded to Step 5 and again, based upon the 2007 testimony of the vocational expert at the previous hearing, the ALJ concluded that Plaintiff could perform other work existing in the national economy including jobs such as eye glass frame polisher, merchandise price marker, or packaging inspector.

Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, from March 25, 2008 through the date of the decision, May 17, 2010.

**III. ISSUES**

The issue before the court in this action for judicial review is whether the ALJ's decision is based on substantial evidence and is free of legal error. Plaintiff seeks reversal of the ALJ's denial of benefits, or in the alternative, a remand for further hearing arguing that the ALJ erred by: (1) "improperly rejecting the opinions of the claimant's treating and examining doctors"; (2) "improperly rejecting lay testimony"; and (3) improperly "relying on evidence outside the record, denying the claimant's constitutional right to cross-examine the vocational expert, and relying on vocational testimony provided in response to an incomplete hypothetical." (ECF No. 21 at 11).

**IV. DISCUSSION**

**A.     Medical Opinion Evidence**

**1.     R. Allen LaBerge, MD's Post-Hearing Assessment**

The medical evidence considered by the ALJ included the chart notes of R. Allen LaBerge, MD, a family practitioner in White Swan, Washington, who once in 2008 and once in 2009, examined Plaintiff in connection with Plaintiff's receipt of state assistance for unemployed low-income individuals. Also included in the record are the physical evaluation forms he filled out in each of those years for DSHS. (Tr. 352-355, 379-381). In both the 2008 and 2009 treatment notes, Dr. LaBerge notes that Plaintiff's conditions are chronic, the "most disabling" of which are depression and anxiety. In 2008 and 2009, he opined on Plaintiff's level of physical impairment due to her back pain, but did not opine on how her mental impairments affected her work activities. He specifically deferred such evaluation to her mental health providers.

On March 15, 2011, ten months after the ALJ's decision in this case, Dr. LaBerge, completed another "functional assessment" of Plaintiff for DSHS. The assessment indicates it was completed based upon "records" (though it does not state which records) and an evaluation performed in 2010 (the entire date is illegible). Dr. LaBerge opines therein that Plaintiff's capacity to work is impaired, it is expected to be impaired for her "lifetime," and though her psychiatric problems are "stable," "*they will not improve to the point she will ever be able to return to work*." (Tr. 764). On March 22, 2011, Plaintiff's counsel submitted Dr. LaBerge's 2011 functional assessment to the Appeals Council, who considered the evidence but nonetheless denied the request for review. (Tr. 4).

This court must consider records submitted to the Appeals Council in analyzing whether or not the decision of the ALJ is supported by substantial evidence. *Brewes v. Commissioner of Social Sec. Admin*., 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). Accordingly, Dr.

LaBerge's 2011 assessment is appropriately part of the record before the court.

Confusingly, both parties' argument erroneously assumes Dr. LaBerge's 2011 assessment was available to the ALJ at the time of his decision.  Plaintiff's first argument is that the ALJ erred in failing to provide a valid reason for rejecting Dr. LaBerge's 2011 opinion.  ECF No. 21 at 14 ("the ALJ did not even mention Dr. LaBerge's opinion that Ms. Painters impairments 'will not improve to the point she will ever be able to return to work."); (ECF No. 24 at 4)(arguing the ALJ "completely ignored Dr. LaBerge's most recent opinion...").  The Commissioner states: "[T]he ALJ stated that he considered all of the evidence of record...The ALJ clearly considered Dr. LaBerge's examination and treatment notes and opinions; thus, the ALJ considered Dr. LaBerge's statement that Plaintiff 'will not improve to the point she will ever be able to return to work..." (ECF No. 23 at 10-11).  The question before the court is not whether the ALJ erred by failing to mention Dr. LaBerge's 2011 assessment, but rather whether substantial evidence supports the conclusion that Plaintiff was not disabled.

The Commissioner cites a number of bases upon which an ALJ *might have* discounted Dr. LaBerge's 2011 assessment.  The Appeals Council did not, and was not required to, resolve this ambiguity.  Though it is impossible to know for sure how the ALJ might have evaluated this evidence, there are convincing reasons in the record to believe that an ALJ would give this evidence more credence than suggested by the Commissioner.  *First*, although not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability, the opinion of examining, or even a non-examining doctor, may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  *Second*, the ALJ specifically stated that he considers opinions on the issue of disability relevant.  In his 2008 denial of Plaintiff's benefits, he noted that the record "does not contain any opinions from treating or examining physicians

who opine...the claimant is disabled." (Tr. 76). Moreover, Dr. LaBerge's assessment directly contradicts the ALJ's 2010 finding that "no doctor has told her not to work." (Tr. 30). *Third*, the ALJ accorded previous portions of Dr. LaBerge's 2008 and 2009 assessments "significant weight," (Tr. 32). *Finally*, Dr. LaBerge's assessment weighs in favor of Plaintiff's credibility as to the severity of her mental impairment, whose intensity, persistence and limiting effects the ALJ found were "not well supported by the objective findings or any other corroborating evidence."

Resolving ambiguities in the record is ordinarily the ALJ's responsibility, *e.g., Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.1989), and further administrative proceedings are generally appropriate if an ALJ has not had the opportunity to consider significant additional evidence. *See, e.g., Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (not appropriate to remand for an award of benefits based upon "evidence that the ALJ has had no opportunity to evaluate"). The court concludes that this action should be remanded to the Agency so that the ALJ can consider, *inter alia,* what weight should be given to Dr. LaBerge's 2011 assessment, and to re-determine whether his opinions, along with all the other evidence in the record, including additional the evidence the ALJ may develop (as set forth below), establish that Plaintiff is disabled.

## 2. Judy Colligan-Marshall, PMHNP and Carol Jurs, MA

Plaintiff received medical treatment from the Department of Veterans Affairs. Although Robert Gorusch, DO, was her primary care provider, a psychiatric nurse practitioner, Judy Colligan-Marshall, PMHNP, served as Plaintiff's primary mental health care provider since December 1, 2005 (though the Administrative Record contains no medical evidence prior to 2007). The record reflects Plaintiff received consistent and ongoing support throughout 2008 and 2009 by Colligan-Marshall and licensed psychiatric social worker, Macy Woodside, LCSW, often on the same day.

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 404.1502. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 404.1502. Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06–03p, at *2.

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not acceptable medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed acceptable medical sources under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, at * 3.

Factors the ALJ should consider when determining the weight to give an opinion from these "important" sources include: the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant; the consistency of the source's opinion with other evidence in the record; the relevance of the source's opinion; the quality of the source's explanation of his opinion; and the source's training and expertise. SSR 06–03p, at *4.

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06–03p, at *6.

Ms. Colligan-Marshall's January 12, 2009 treatment note states that Plaintiff "is applying for SSD which this provider supports as patient has very limited tolerance for any stress and decompensates with stress." (Tr. 578). The ALJ's decision discussed Colligan Marshall's January 12, 2009 health note (Tr. 32), but ignored the opinion regarding tolerance of stress.  It is an opinion which is

elsewhere supported in the record, notably by the mental health note of Macy Woodside from July 28, 2008 indicating that Plaintiff had reported "my roommate asked me to start paying $50.00 a month for rent. I don't have $50.00 so I thought I'd commit suicide." (Tr. 614). When asked if she had contemplated calling anyone for help, she replied "[N]o. I didn't think to call anyone....I didn't want to be homeless so that was all I could think of." (Tr. 615).

As treatment records serve a different purpose than opinion assessments, the VA records primarily document medication management and do not discuss Plaintiff's mental health condition in the context of work-related limitations of functioning. However, on May 27, 2009, Colligan-Marshall provided her opinion of Plaintiff's functional limitations in a psychological evaluation form for DSHS. (Tr. 347-349). In this assessment, Colligan-Marshall noted marked limitation in the ability to relate appropriately to co-workers and supervisors. The ALJ accorded this opinion little weight because "she did not provide any rationale in support of that opinion." She also assessed other moderate limitations, including in the ability to respond to and tolerate the pressure and expectations of a normal work setting, which the ALJ rejected as it "appeared to be based primarily on a diagnosis of PTSD." The ALJ did not provide legally sufficient reasons for rejecting Colligan-Marshall's opinions. The assessment *twice* states it also based upon a diagnosis of depression, which the health notes reflect she consistently treated Plaintiff for. The ALJ's treatment of the opinions of this "important source," having been Plaintiff's primary medical point of contact for four years, is unreasonable and legally deficient.

The opinions of Dr. LaBerge and Colligan-Marshall, who both saw Plaintiff on more than one occasion, are also consistent with the only other mental health evaluation in the record. In June 2008, Plaintiff was evaluated by Carol Jurs, MA of Central Washington Comprehensive Mental Health. (Tr. 382-389). Though, as the ALJ noted in his decision, Jurs "evaluated the claimant on only one occasion,"

she also assessed that Plaintiff was "chronically ill" with numerous severe and moderate limitations.  Perhaps most relevantly, Jurs noted that Plaintiff was limited in her ability to respond appropriately and tolerate the pressure and expectations of a normal work setting and to interact appropriately in public.  The evaluation indicates that Plaintiff had reported to Jurs her suicidal and racing thoughts, nightmares, that she does not go outside, that she thinks people are staring at her, and her worry about not being able to remember things.  Jurs recommended Plaintiff have therapy on a weekly basis, if Plaintiff could afford to do so.  The ALJ's rejection of Jurs' entire opinion because "[s]ubsequent records reveal improvement in *mental <u>functioning</u>*" (Tr. 32) is belied by the 2009 and 2011 assessments of Colligan-Marshall and Dr. LaBerge.   Intervals without suicidal-ideations are not akin to improvement in *functional* status.  As this problem permeates the ALJ's decision, it is further discussed below.

**B.   Credibility**

Decisions to grant or deny benefits often hinge entirely on whether or not the claimant's description of what she is feeling is believed.  The administrative hearing is therefore a crucial aspect of the disability determination process and the ALJ has a special responsibility to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.  In this case, the ALJ did not do so. Plaintiff testified that she does not go outside the home, she does not socialize, she has a lack of energy, she has difficulty with memory, suffers from panic attacks and crying spells, and the thought of suicide goes through her mind once a month. The ALJ discredited Plaintiff's testimony primarily based upon the lack of objective support in what he characterized as the "weak medical evidence." Explaining this characterization, the ALJ described the evidence as reflecting "routine,""monthly sessions," treatment with psychiatric medications and "medication management" resulting in a "stable" condition with ongoing mental health therapy.  (Tr. 30).

The ALJ erroneously conflates the mental health providers' characterization of the Plaintiff's condition as medically "stable," with *functionality*. Evidence of the Plaintiff's stable *mental* condition is not a basis in this case to either discredit Plaintiff or conclude Plaintiff is capable of functioning– on a sustained basis-- in a workplace setting. Neither do her hopeful remarks noted by the ALJ such as that "life is going well" and that "medications are working," equate to an ability to work. The evidence the ALJ characterizes as "weak" undisputedly demonstrates Plaintiff is chronically ill, must be managed by psychotropic medication, and that she needs and receives regular mental health therapy. Perhaps this evidence could be more fairly described as an incomplete, or at least an ambiguous, picture of Plaintiff's overall functionality and ability to engage in work-related activities during the relevant period. This is why the lack of the medical evidence to support the extent of a claimant's subjective symptoms cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony. *See Varney v. Secretary*, 846 F.2d 581, 584 (9th Cir.1988); *see also, Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir.1991) (noting that "[i]f an adjudicator could reject a claim of disability simply because [plaintiff] fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings"). Furthermore, although Plaintiff ultimately bears the burden of establishing disability, the ALJ had an affirmative duty to supplement Plaintiff's medical record, to the extent it was incomplete.

In addition, although an ALJ may rely on character evidence, such as prior convictions, in evaluating credibility, this court seriously doubts whether Plaintiff's now 13-year old forgery and identity theft convictions – which Plaintiff has indicated  were fueled by her former drug addiction – ought to be a factor eroding Plaintiff's credibility today.

The court finds the ALJ's credibility assessment, on balance, is insufficient given the errors described above. Moreover, because the court finds remand

necessary for consideration of additional evidence and further hearing, the ALJ's credibility assessment could be otherwise implicated and require further consideration on remand.

**D.    Residual Functional Capacity**

Unlike the typical judicial proceeding, a social security disability hearing is nonadversarial, with the ALJ responsible in <u>every</u> case – even where a claimant is represented by counsel -- to ensure that an adequate record is developed.  In this case, it appears the ALJ failed to thoroughly probe into, inquire of, and explore for all relevant facts. The result is significant omissions in the record and a deficient step four analysis.

At step four, the ALJ is required to formulate a residual functional capacity by analyzing all of the relevant factors as to Plaintiff's ability to perform work-related activities and after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see SSR 96–8p; SSR 96-16).  In making an RFC assessment, the ALJ must consider *all* symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  The ALJ is permitted to draw "meaningful inferences" in order to make "reasonable conclusions" as to the individual's strengths and weaknesses. (SSR 85-16).

The Social Security Administration considers mental impairments serious enough to warrant special regulations that outline special techniques to use when evaluating mental impairments and for formulating a mental RFC.  Specifically, the ALJ must assess Plaintiff's abilities to, on a sustained basis, 1) understand, to carry out and remember instructions; 2) to respond appropriately to supervision, coworkers, and customary work pressures in a work setting; and 3) deal with

changes in a routine work setting. SSR 85–15, 85–16. Consideration must be given to the 1) quality of daily activities in both occupational and social spheres; 2) ability to sustain activities, interests and relate to others *over a period of time* (factoring in the frequency, appropriateness, and independence of the activities); 3) level of intellectual functioning; 4) ability to function in a work-like situation; 5) the individual's age, education, and work experience.  SSR 85-16. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." (SSR 85–15).

In making the RFC determination, the ALJ did not consider all of Plaintiff's asserted functional limitations and improperly rejected, and disregarded, the important lay witness testimony of Denny Steers and Maycie Williamson.  Mr. Steers has had the opportunity to observe Plaintiff on a daily basis and his testimony at the hearing brought out the effect of the various ailments and of her mental state on Plaintiff's daily life.  Although Ms. Williamson may see Plaintiff less often, her observations still carry some weight.  *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).  Outlined below are some of the obvious deficiencies noted by the court in the ALJ's RFC evaluation. *Inter alia*, on remand, it will be necessary for the ALJ to reassess Plaintiff's RFC.

*Fatigue*. In her disability application, Plaintiff indicates she believe she is disabled because the medications she takes cause her to be "too drowsy to work" or drive  (Tr. 163).   Plaintiff's medication list includes: adefovir (for hepatitis B), albuterol (for shortness of breath), amanex (for asthma), arpiprazole (for suicidal thoughts), hyrdoxyzine pamoate (for anxiety), levothyroxine (for thyroid), prazosin (for nightmares), and ranitidine (for indigestion), venlafaxine (for anxiety).  When needed, she has also been prescribed ibuprofen and hydrocodone for pain.  Plaintiff testified that after taking her medications she goes back to bed. (Tr. 46).  The lay witnesses discuss how Plaintiff's pace is very "slow" and that she tires quickly. (Tr. 59-60, 238).

At the evidentiary hearing the ALJ asked Plaintiff to recite her list of medications, but did not ask the follow up question: whether the medications cause her any side effects which might adversely affect her ability to work.   The ALJ is required to consider the type, dosage, and side effects of any medication. 20 CFR § 404.1529(c)(3).  There is no indication in the record that the ALJ considered Plaintiff's alleged disabling symptom of fatigue or the side effects of her medication.

*Ability to Function Outside the Home.*  It is evident that Denny and Judy Steers provide Plaintiff a great deal of stability, having furnished her a *free* home at a time she was homeless and in crisis, and now continuing to house and support Plaintiff day after day.  The Social Security regulations recognize that "[p]articularly in cases involving chronic mental disorders, overt symptomatology may be controlled by living in  highly structured and supportive settings...Such settings may greatly reduce the mental demands placed..." and "[w]ith lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized."  An ALJ is required to consider a claimant's ability to function *outside* of such structured settings.

Closely related to the foregoing is the Plaintiff's ability to cope with stress, customary work pressure, and ability to appropriately interact with coworkers. There is evidence of Plaintiff's inability to cope with even minimal stress, much less competitive employment.  Culligan-Marshall indicated Plaintiff has very limited tolerance for stress (Tr. 578) and Plaintiff became suicidal when the Steers asked her to pay rent.  (Tr. 614-615).  Ms. Jurs' evaluation describes Plaintiff as "almost agoraphobic." (Tr. 385). In the lay witness statement of Maycie Williamson, she describes Plaintiff as being very afraid and nervous in social settings, and having severe panic attacks when approached by strangers while with Williamson in a grocery store and a post office "to the point of urinating on herself."  Lay witness and roommate Denny Steers also testified that Plaintiff

ORDER – 18

experienced frequent panic attacks and "can't be around people." He said, "I used to take her to the store with me, but ...on the occasions I took her, I'd find her standing, crying in the – or find her back out in the car crying 'cause she can't be around people, you know she gets really excited....breaks down into tears." "I don't take her to the store with me anymore." (Tr. 61). He also testified that if there are more than one or two people in the veteran's transport van "she usually won't go...she'll postpone it." (Tr. 63).

    At the administrative hearing, the following exchange took place with Plaintiff's counsel.

> Q: Do you experience panic attacks?
> A: Yes. I--
> Q: How often do you have panic attacks?
> A: Four times a month.
> Q: When they occur how long do they usually last?
> A: About 45 minutes to an hour.
> Q: How do they affect your ability to get around and do things?
> A: I–I just stay in my room, I don't go out of my room. I don't get nothing done. A lack of interest.

(Tr. 45-46.). Neither counsel or the ALJ inquired of the even more relevant questions like: What situations prompt your panic attacks to occur? Have they ever occurred in public or social settings? What impact do you believe your panic attacks would have in a work setting?

    It was error for the ALJ to dismiss this serious evidence based upon there being "no evidence she complained of panic attacks or crying spells during mental health treatment sessions." (Tr. 30). Moreover, the ALJ's conclusion that "there is no evidence of difficulties with routine types of social interaction" is contrary to the record.

    *Climbing*. Plaintiff testified she has difficulty with stairs and had recently sprained her ankle going down stairs. Her roommate testified she trips and falls several times a week. The ALJ's RFC did not incorporate restrictions on climbing stairs, ladders, ropes or scaffolds, or stooping, crouching, crawling, and kneeling, which are commonly considered for obese claimants.

*Position changes.*  While there is no evidence of unremitting pain, Plaintiff is obese, experiences low back pain, and there is evidence in the medical record indicating her need to change positions frequently.  (Tr. 764).  Plaintiff testified that in her daily life she changes position between sitting, standing, and walking every twenty minutes. (Tr. 50).

*Asthma*.  Plaintiff has asthma and shortness of breath, is prescribed Albuterol, and she testified she uses her inhaler three times a day for relief.  No inquiry was made as to restrictions regarding odors, dusts, fumes, gases, poor ventilation, etc.

Remand is also necessary to allow the ALJ to reevaluate Plaintiff's mental and physical RFC.

**E.   Vocational Expert Testimony**

Finally, as it relates to the failure to fully and fairly develop the record on other issues, the court briefly addresses the ALJ's failure to take testimony from the vocational expert, Richard Hinks, who was in attendance at the hearing. At the end of the hearing, the ALJ advised counsel for the Plaintiff that "I don't have any questions for the vocational expert[] I didn't ask earlier[][.]" In his decision, the ALJ's analysis at step four and five relies upon vocational expert testimony from the prior hearing, whose transcript is not a part of the Administrative Record. Neither Plaintiff's new attorneys or this court can know what the ALJ "ask[ed] earlier," and as such, the ALJ should have asked the same or similar updated hypothetical to the vocational expert in attendance.

**F.   Res Judicata**

The court notes that the ALJ determined that his 2008 findings "concerning the claimant's residual functional capacity, education, and work experience up to the date of the prior decision are entitled to *res judicata* consideration in subsequent proceedings." (Tr. 24).  The ALJ applied a presumption of non-disability. A previous final determination of non-disability creates a presumption

of continuing non-disability with respect to any subsequent unadjudicated period of alleged disability. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir.1996). However, the presumption of non-disability does not apply if, e.g., the claimant proves "*a change in the claimant's age category* ..., an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability." SSAR 97–4(9).

On remand, the ALJ shall review whether the presumption of non-disability applies.  The court notes that in the months preceding the ALJ's first decision and hearing, Plaintiff turned 50-years old, thus moving her from the "younger individual" classification to the "closely approaching advanced age" (ages 50-54) classification.  20 C.F.R. § 404.1563. However, the ALJ Atkin's 2008 decision is completely silent as to Plaintiff's date of birth, her age, or the age category the ALJ utilized.  It is unknown whether the ALJ considered Plaintiff's age at the date of alleged onset, the date of application, or the date of the decision, and what age the ALJ used in the hypothetical posed to the vocational expert.   In the ALJ's 2010 decision, he referenced Plaintiff's age at "the date of her current application."  If the same age benchmark was used by the ALJ Atkins in 2008, and Plaintiff was thus considered a "younger individual," it was legal error to apply the presumption of non-disability in this case.  *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988) (noting a change in age status can be "often outcome- determinative").

**IV. CONCLUSION**

Because there are outstanding issues to be resolved, the court denies Plaintiff's request for an award of benefits, and instead remands for further administrative proceedings.

The court recognizes that internal policy of the Social Security Administration provides that on remand from the court, the proceedings are held before the previously assigned ALJ, unless the court expressly directs the case be

assigned to a different ALJ. HALLEX I–2–155(D)(11). The court recognizes that this provision is not binding on this court or the Administration. *See Moore v. Apfel*, 216 F.3d 864 (9th Cir. 2000).  ALJ Atkins is an experienced and competent judge who has presided over both of the Plaintiff's disability applications.  There is nothing to indicate that ALJ Atkins will not give this case a full and fair hearing on remand following the directions included herein. For those reasons, this court will not direct that this case be reassigned to another judge..

   1. Plaintiff's Motion for Summary Judgment (or remand) (ECF No. 20) is Granted.

   2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is Denied.

   3. This matter is remanded to the Social Security Administration for further proceedings consistent with this Order.

   4. The Clerk of Court enter judgment of remand to the Social Security Administration and close the file in this court.

   **IT IS SO ORDERED.**

   Dated June 14, 2013.
                          s/ Justin L. Quackenbush
                      JUSTIN L. QUACKENBUSH
            SENIOR UNITED STATES DISTRICT JUDGE